# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

JUSTIN SPENTZ,
                    *Defendant-Appellant.*

No. 10-10134

D.C. No.
2:08-cr-00164-KJD-
GWF-4

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

STEVEN GOLDEN,
                    *Defendant-Appellant.*

No. 10-10180

D.C. No.
2:08-cr-00164-KJD-
GWF-3

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
March 15, 2011—San Francisco, California

Filed July 28, 2011

Before: J. Clifford Wallace, Ferdinand F. Fernandez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

9715

## COUNSEL

William M. Kent, Jacksonville, Florida, for appellant Justin Spentz.

Benjamin C. Durham, Las Vegas, Nevada, for appellant Steven Golden.

Elizabeth A. Olson, Assistant United States Attorney, Las Vegas, Nevada, for the appellee.

## OPINION

CLIFTON, Circuit Judge:

This appeal presents the issue as to when, in a criminal trial, a district court must give the jury instructions requested

by a defendant regarding an entrapment defense. Defendants Justin Spentz and Steven Golden appeal from their convictions for conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and aiding and abetting in violation of 18 U.S.C. § 2. Defendants argue that the district court erred in refusing to provide an entrapment instruction to the jury. There was, however, insufficient evidence presented at trial to support a finding by the jury that defendants were induced by the government to commit the crimes, one of the two necessary elements of an entrapment defense. As a result, we conclude that the district court did not err by refusing to give the entrapment instruction, and we affirm.

## I.   Background

In September 2007, agents of the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) opened an undercover storefront operation under the guise of a functioning tattoo shop. The purpose of the undercover operation was to identify dangerous individuals with violent proclivities. Once such an individual was identified, the undercover agents offered him the opportunity to engage in a crime. The fictional crime was intended to be dangerous enough that the average law abiding citizen would decline the offer but with a sufficient reward that a person with criminal proclivities might accept.

In February 2008, a confidential informant introduced the ATF Special Agent who was posing as the owner of the tattoo shop to Deon'te Reed. The agent identified Reed as a dangerous individual who had previously been arrested for armed robbery and led a group of criminals that committed home burglaries. It was determined that Reed was an appropriate target for the undercover operation.

On April 17, 2008, Reed arrived at the tattoo shop with two other men, one of whom was defendant Justin Spentz. They were introduced to another undercover ATF Special Agent pretending to be a disgruntled drug courier. This agent told the men about a drug operation that periodically utilized stash houses to store large quantities of cocaine. The agent told the men that there was approximately $2.5 million worth of cocaine in the stash house and it was typically guarded by two men, only one of whom was known to be armed. The agent proposed that the men rob the stash house, steal the drugs, and split the proceeds with him. Reed verbally indicated that they would assist with the robbery. Spentz did not object.

On May 15, 2008, defendants Spentz and Steven Golden arrived at the Ice House parking lot, which was the predetermined meeting location. Defendants, along with Reed, met with undercover ATF agents. The agent pretending to be the drug courier reiterated the plan and defendants indicated their approval. The agent then directed them to a nearby warehouse to prepare for the robbery. ATF agents arrested defendants upon arrival at that location.

Spentz and Golden were tried together but separately from Reed. During the trial, both denied knowing about the plan to rob a drug house. Spentz testified that Reed had called him on the 15th and asked him to come to the Ice House parking lot. When asked why Reed wanted him to come to the Ice House, Spentz testified that Reed just said it was "important" and that he "thought it was just like any other time, meet up and, you know — and do other things." Golden testified that Spentz told him that Reed wanted to meet at the Ice House but did not know why. Spentz denied hearing anything said by the undercover officers to Reed and said that Reed never explained why he wanted Spentz to meet him. Golden testified that he never got out of the car at the Ice House. According to Spentz, he and Golden followed Reed and the officers to the second location because they were "still trying to prior [sic] knowledge of what he wanted me to come meet him for,

like, what was my purpose, like, what did he want." Similarly, Golden, who was the one driving, testified that he followed Reed and the officers because he "was just curious . . . we drove all the way up here and we just drove up here for nothin'? Like, what was the reason for us just to come up here?"

Based on the evidence presented by the government that both Spentz and Golden were told about the plan by the undercover officers, Spentz and Golden sought an entrapment jury instruction as an alternative theory to their claims of innocence.[1] They argued that the government's evidence provided sufficient basis for a jury to find that they had been entrapped, even though their own testimony did not support such a claim. The district court denied the request for an entrapment instruction, holding that there was insufficient evidence to support the instruction. The district court also indicated that it believed giving the instruction would be inconsistent with defendant's repeated denial of knowledge of the robbery. The defendants were convicted, and they brought these appeals.

## II.   Discussion

Before turning to the merits of defendants' claim, we address the standard of review to be applied. Both defendants and the government have suggested that the question of what standard to apply to the district court's denial of the defendants' requested jury instruction is "subject to conflicting precedent within our circuit." *United States v. Kessee*, 992 F.2d 1001, 1003 (9th Cir. 1993). While this may have been the case at one point, we have subsequently resolved this confusion. *See United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) (en banc).

---

[1]Defendant Golden did not explicitly join Spentz's request for an entrapment instruction, but the government concedes that the instruction was discussed with respect to both defendants during conference in chambers. The issue will be considered with respect to both defendants.

As we explained in *Heredia*, "[w]hether a jury instruction was properly given presents two questions, one primarily factual, the other purely legal." *Id.* If our court is reviewing a legal question, such as "[w]hether the substance of the instruction itself is correct," our review is *de novo*. *Id.* On the other hand, "whether an instruction should be given in the first place . . . is mostly a factual inquiry" which is reviewed for abuse of discretion. *Id.; see also United States v. Perdomo-Espana*, 522 F.3d 983, 986 (9th Cir. 2008) ("When the parties dispute the sufficiency of a proposed jury instruction's factual foundation, we review for abuse of discretion."). Here, the district court denied the entrapment instruction because it found there was insufficient evidence to support the instruction. This is a factual question, which is reviewed for abuse of discretion.

**[1]** Turning to the merits, it is well established that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). "Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993) (internal quotation marks omitted).

**[2]** While it can be slight, there still must be some evidence demonstrating the elements of the defense before an instruction must be given. The entrapment defense has two elements: "(1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *United States v. Barry*, 814 F.2d 1400, 1401 (9th Cir. 1987). We have held that "[a] defendant is not entitled to have the issue of entrapment submitted to the jury in the absence of evidence showing some inducement by a government agent *and* a lack of predisposition by the defendant." *United States v. Rhodes*, 713 F.2d 463, 467 (9th Cir. 1983); *see also United States v. Busby,* 780 F.2d 804, 806 (9th

Cir. 1986) ("The trial court will instruct on entrapment only if the defendant presents some evidence of both elements of the entrapment defense.").[2]

**[3]** Here, defendants have failed to point to any evidence of inducement presented at trial by any party. There is no dispute that the government proposed the idea of committing the robbery to defendants and their accomplices, but "the fact that government agents merely afford opportunities or facilities for the commission of the offense does not constitute entrapment." *Sherman v. United States,* 356 U.S. 369, 372 (1958) (internal quotation marks omitted). Rather, "[a]n 'inducement' consists of an 'opportunity' *plus* something else— typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Poehlman*, 217 F.3d 692, 701 (9th Cir. 2000).

Both before the district court and on appeal defendants argued that they were induced to commit the crime because the government's plan presented them with the opportunity to

---

[2]A defendant is not required to admit that he committed the crime in order to be entitled to an entrapment instruction. "[A] defendant in a criminal proceeding may assert inconsistent defenses." *United States v. Demma*, 523 F.2d 981, 985-86 (9th Cir. 1975). This means that a criminal defendant may assert innocence and, in the alternative, entrapment. *Id.* Additionally, the evidence supporting the entrapment defense need not be presented by the defendant. Even when a defendant presents no evidence of entrapment, it "may nonetheless become an issue at his trial if (1) the Government's case-in-chief suggests that the defendant who was not predisposed was induced to commit the crime charged, or (2) a defense or a government witness gives evidence suggesting entrapment." *Id.* at 984. Therefore, to the extent the district court denied the entrapment instruction here because entrapment was inconsistent with the defendants' claims of innocence or because the only evidence of entrapment came from the government's case, it erred. However, the district court's denial of the instruction was primarily based on there being insufficient evidence of inducement. As explained below, taking the evidence presented by the government into consideration, there was still no evidence of inducement.

make a substantial amount of money by committing an armed robbery. Defendants contend that the offer of a potentially large reward—approximately $2.5 million worth of cocaine— for relatively minor risk, is sufficient to fulfill the "something else" prong of inducement. Defendants misunderstand the nature of the "something else" that gives rise to inducement.

[4] Defendants' argument fails because the potentially large reward they claim serves as the "something else" was the product of the crime they agreed to commit. The drugs and money they would recover from the robbery were not an alternative, non-criminal motivation; they were the prototypical criminal motivation for robbery. *See United States v. Layeni*, 90 F.3d 514, 518 n.2 (7th Cir. 1996) ("Indeed, the reward hoped for and received by Johnson (drugs and perhaps money) is the typical benefit of participating in this type of criminal enterprise, a form of reward that is not sufficient, by itself, to establish inducement." (internal quotation marks omitted)). The entrapment defense is meant to prevent the government from convincing someone who will not be persuaded by criminal motivations to commit a crime. *See Sherman*, 356 U.S. at 372 ("To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."). When the motivation presented by the government is the typical benefit from engaging in the proposed criminal act, there is no reason to be concerned that an innocent person is being entrapped.[3]

---

[3]Nor was the crime proposed in this case one which an average law-abiding citizen would be likely to engage in even for a substantial reward. Defendants describe the proposed crime as low-risk. The crime was, however, armed robbery, and it seems unlikely that an average law-abiding citizen would engage in armed robbery under any circumstances. The specifics of the proposed crime here, as described by the agents to the defendants, would seem to make it even more unlikely. There clearly would have been substantial risk involved. First, the defendants were told that at least one person guarding the stash house was armed. The defendants had no way of knowing whether there would be other armed guards.

**[5]** *Poehlman* demonstrates the types of promises that constitute inducement. There, the undercover government agent "played on Poehlman's obvious need for an adult relationship, for acceptance of his sexual proclivities and for a family" to induce him to commit a crime. *Poehlman*, 217 F.3d at 702. These were all non-criminal motivations that the government used to induce Poehlman to engage in criminal activity. If, hypothetically, defendants were anti-illegal drug activists, and the undercover agent had suggested that defendants rob the stash house in order to disrupt an illegal drug business, that might have been the kind of non-criminal motivation that could potentially give rise to inducement. *See Jacobson v. United States*, 503 U.S. 540, 552 (1992) (government conceded inducement when it "wav[ed] the banner of individual rights" which "exerted substantial pressure on petitioner to obtain and read [illegal] material[s] as part of a fight against censorship and the infringement of individual rights"). But the promise of a large payout from committing a robbery is not grounds for establishing inducement.[4]

**[6]** Since the only evidence of inducement that defendants

---

Also the defendants were told that there was no way to case the stash house before the robbery. This meant that the defendants were walking into a drug stash house without any idea of who or what was inside. Moreover, they were relying solely on the word of another criminal whom they had just met and had little, if any, reason to trust. Even if the robbery was successful, the defendants believed the victim of the fake robbery was a Mexican drug cartel, which raised the potential for danger and retribution. This was anything but a low-risk crime.

[4]We acknowledge that we have previously listed "promises of reward" as a form that government inducement can take. *See United States v. Garza-Juarez*, 992 F.2d 896, 909 (9th Cir. 1993) ("Government inducement may take the form of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." (internal quotation marks omitted)). As explained in *Poehlman* and *Layeni*, the reward promised cannot be the criminal reward but must be some other, non-criminal reward that the individual receives for committing the crime.

offer is the size of the potential pay-out from the robbery, there is a dearth of support for a showing of inducement. In the absence of such evidence, the district court did not abuse its discretion in denying defendants' requests for an entrapment jury instruction.

**AFFIRMED.**