**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10370 |
| Plaintiff - Appellee, | D.C. No. 2:04-cr-00387-MCE-1 |
| v. | |
| JESUS RODRIGUEZ, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Chief District Judge, Presiding

Argued and Submitted June 11, 2013
San Francisco, California

Before: FERNANDEZ and CALLAHAN, Circuit Judges, and VANCE, Chief District Judge.[**]

Defendant-Appellant Jesus Rodriguez appeals his conviction and sentence

for two counts of possession of methamphetamine with intent to distribute. He

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Sarah S. Vance, Chief District Judge for the U.S. District Court for the Eastern District of Louisiana, sitting by designation.

1

contends that an alleged *Brady* violation warrants dismissal of the indictment, or alternatively, a new trial, and raises several other points of alleged error. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

Rodriguez contends that the government violated its *Brady* obligations by failing to disclose that a cooperating defendant, Marcos Mendez, told it that a government informant had "called him a lot to do drugs" because this information would have bolstered Rodriguez's entrapment defense. In order to establish a *Brady* violation, a defendant must show: (1) that the information was favorable; (2) that the government suppressed it; and (3) prejudice. *See United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011). Even if the information was favorable to Rodriguez, we conclude that there was no *Brady* violation because the government did not suppress the information and Rodriguez cannot establish prejudice.

A *Brady* claim fails due to a lack of government suppression where the government provides the defense with "the means of obtaining exculpatory evidence." *United States v. Bond*, 552 F.3d 1092, 1096 n.4 (9th Cir. 2009). Here, the government provided the defense with the case agent's notes of an interview with Mendez at the beginning of the trial. Rodriguez could have subpoenaed or

2

otherwise attempted to contact Mendez, but took no action until after the trial. Under these circumstances, the government did not suppress any allegedly favorable information.

Moreover, even if the government had suppressed the information, Rodriguez's *Brady* claim would fail because he cannot demonstrate prejudice. "A finding of prejudice requires that the conduct have some impact on the outcome of the proceeding – i.e., a reasonable probability that the result of the proceeding would have been different or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Wilkes*, 662 F.3d 524, 537 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2119 (2012). Even assuming that Mendez would not have invoked his Fifth Amendment privilege against self-incrimination, would have testified as Rodriguez contends, and the jury would have believed him despite the inconsistencies in his story, the evidence against Rodriguez would remain overwhelming.

The government established that Rodriguez was not induced and was predisposed to commit the crime. It introduced evidence that: (a) Rodriguez was comfortable discussing drugs with a government informant and familiar with drug terminology; (b) had $20,000 heat sealed in a safe at his store; (c) previously sold drugs to another cooperating defendant; (d) attempted to flee from the police and

3

conceal evidence; and (e) engaged in multiple large-scale drug transactions.

Moreover, Rodriguez's own testimony was problematic. Rodriguez contended that

he made a relatively small amount of money off of the drug sales because he did

not know how to cut the drugs, yet still decided to engage in multiple sales.

Accordingly, there was no *Brady* violation.[1]

## II

Rodriguez also claims that the district court abused its discretion by denying

his mid-trial request for a continuance to allow him time to subpoena Mendez. "A

trial court clearly abuses its discretion only if denial of the continuance was

arbitrary or unreasonable." *Wilkes*, 662 F.3d at 543. The district court's decision

was not arbitrary or unreasonable because: (1) Rodriguez was not diligent, as he

had a full week to review the agent's notes and attempt to subpoena or otherwise

contact Mendez; (2) it is unclear whether Mendez would have provided the sought-

after testimony; and (3) regardless, Rodriguez suffered no harm in light of the

overwhelming evidence against him. *Cf. United States v. Rivera-Guerrero*, 426

F.3d 1130, 1138-39 (9th Cir. 2005) (discussing factors for evaluating whether the

denial of a continuance is arbitrary or unreasonable). Moreover, as the government

---

[1] Despite Rodriguez's heated rhetoric, he has not shown outrageous government conduct in this respect or otherwise.

noted at oral argument, it is unlikely that the continuance would have only delayed the trial by one trial day. An attempt to subpoena Mendez would have raised issues concerning immunity and the propriety of asserting the Fifth Amendment privilege, necessitating further consideration, possible hearings and motion practice. The district court did not abuse its discretion.

## III

Rodriguez also argues that the district court erroneously overruled his objection to the government's closing argument. The government argued that even if a government informant had contacted Rodriguez to persuade him to sell drugs as Rodriguez claimed, it did not constitute inducement because that type of contact would not create a substantial risk that an otherwise law-abiding citizen would commit the crime.

"Entrapment has two elements: government inducement of the crime and the absence of predisposition on the part of the defendant." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 648 (9th Cir. 2006) (internal quotation marks omitted). "Inducement is any government conduct creating a substantial risk that an otherwise law-abiding person would commit a criminal offense." *Id.* at 648 (internal quotation marks omitted). Promises of a criminal reward, however, cannot constitute inducement. *United States v. Spentz*, 653 F.3d 815, 820 n.4 (9th

5

Cir. 2011) (alteration marks omitted), *cert. denied*, 132 S. Ct. 1600 (2012). The government was entitled to argue that promises of large profits from drug sales do not constitute inducement and would not have induced a law-abiding person to commit the crime. Accordingly, the district court correctly overruled Rodriguez's objection.

IV

Rodriguez also challenges his sentence. He asserts that: (a) the government engaged in sentencing manipulation by setting up multiple transactions which "stacked" the weight of the drugs against him for sentencing purposes; (b) the court should have used the weight of the methamphetamine mixture rather than the pure methamphetamine to determine the offense level; (c) the court failed to give proper consideration to his personal circumstances; and (d) the sentence was substantively unreasonable. We find these arguments unavailing.

A

We have previously recognized that a district court may consider the full amount of drugs at issue where law enforcement sets up multiple drug transactions with a defendant for legitimate reasons. *See United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995). Here, there was evidence that the government continued its investigation to obtain better evidence (specifically, a higher quality video) and set

6

up a large purchase at the end of its investigation in order to get the largest quantity of drugs off the street as was possible. Consequently, the district court did not clearly err in determining that the government did not engage in sentencing manipulation. *See id.*

## B

The U.S. Sentencing Commission Guidelines Manual indicates that the court should use the "greater" offense level generated by considering either the weight of the mixture containing methamphetamine or the weight of the actual methamphetamine. U.S.S.G. § 2D1.1 Drug Quantity Table Note (B); *see also United States v. Fairchild*, 189 F.3d 769, 778 (8th Cir. 1999) ("The Sentencing Guidelines Drug Quantity Table specifically directs district courts to use the method that results in the greatest offense level for the defendant"). Here, that required the district court to use the weight of the actual methamphetamine. Thus, the district court properly rejected Rodriguez's objection.

## C

The record shows that the district court considered Rodriguez's arguments about his personal circumstances. The court acknowledged that he had generated a great deal of goodwill in the local area, was well-liked, had helped local farm workers, is personable, had no criminal history, and had no problems on pretrial

release.  Nonetheless, the court also noted the seriousness of Rodriguez's crime (which involved large quantities of high-quality methamphetamine), observed that he had involved his sister in his criminal enterprise, found that he had obstructed justice with his testimony at trial, and determined that his sentence was appropriate when compared with other defendants who had pleaded guilty and not been involved in trafficking such large amounts of high-quality methamphetamine. Consequently, the district court did not commit procedural error.

## D

We also conclude that the district court thoroughly considered Rodriguez's arguments before imposing a below-Guidelines sentence.  The sentence was reasonable under the totality of the circumstances here.  *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

**AFFIRMED**[2]

---

[2] Rodriguez also seeks reassignment to a different district judge on remand. As we find no basis for remand, we need not consider this request.  Regardless, there was no evidence of personal bias or other unusual circumstances that would warrant reassignment here.  *See Ellis v. U.S. District Court*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc).