TASHIMA, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s resolution of the evidentiary and sentencing issues, but I disagree with its ruling on the defendant’s entitlement to an entrapment instruction. In reaching its conclusion that Kurt was not entitled to an entrapment instruction, the majority — like the trial court — improperly weighs the evidence and makes credibility determinations, assessments which should be reserved for the jury. I therefore respectfully dissent from Part I of the majority’s Memorandum.
1. Kurt’s only defense was entrapment. He testified that he had been a white supremacist for several years but that, after witnessing the brutal beating of an acquaintance, he renounced his allegiance to the movement. He then decided to use his connections to monitor the activities and threat level of supremacist groups in the region. Kurt became particularly concerned about an offshoot of the Northwest Front, a leading white supremacist organization, after speaking with the government informant. He testified that his primary motivation was to keep tabs on the Northwest Front out of concern for Anthony Johnson, the man who had been severely beaten. Kurt argued that he was eventually entrapped by the informant into obtaining weapons.
2. The majority first concludes that any government inducement was legally insufficient because it “essentially constitute[d] promises of a criminal reward.” Memo, at 4.[1] This conclusion misreads the record and draws an impermissible factual inference. There is nothing illegal about joining a white supremacy organization. More importantly, Kurt repeatedly testified that he never intended to commit criminal acts with the Northwest Front.[2] For example, Kurt testified that he obtained a reloader[3] so that he could “appear to be” part of the group, but that he “had no inclination, [and] was playing a game.” He went on to explain that the only reason he wanted to meet members of the group was to “assess the threat that they would be to Anthony.” In short, under Kurt’s version of the story, he was not motivated by the promise of further criminal activity. Although the majority purports fully to credit Kurt’s testimony, it does just the opposite when it discredits his alleged motives.[4]
*728 3. The majority also concludes that there was “no evidence of government pressure or incentives.” Memo, at 4. But this assertion ignores substantial evidence in the record. As an initial matter, Kurt stated that the informant repeatedly encouraged him to join the Northwest Front. More importantly, he testified that the informant asked him to be the armorer[5] for a Northwest Front offshoot, to obtain a reloader, and to obtain firearms. Indeed, Kurt testified that he had told the informant “on several occasions” that he was not permitted to possess firearms, but that the informant nevertheless “continued to encourage [him] to obtain weapons ... on several occasions.” The informant had also proposed — at the direction of the FBI — most of the meetings with Kurt, and had proposed the target shooting trip that led to Kurt’s arrest.
The majority might not think this evidence amounts to “pressure” or “persuasion,” but that question was for the jury to decide. As the majority recognizes (but fails to heed), “[o]nly slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility.” United States v. Spentz, 653 F.3d 815, 818 (9th Cir.2011). Finally, although the informant denied having encouraged Kurt to obtain firearms, this contradiction simply creates a dispute of fact.[6] See United States v. Kessee, 992 F.2d 1001, 1004 (9th Cir.1993) (“[S]ince Kessee testified under oath to an account which, if true, could justify a finding of entrapment, he established a genuine issue of fact.”).
Where a defendant, such as Kurt, raises only a single defense, the district court should be especially vigilant about protecting the due process right to present that defense. Rather than safeguarding this right, the district court effectively entered a directed verdict for the government. See Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir.2002) (“[T]he refusal to instruct on entrapment deprived Bradley of his only defense and, as a result, of due process.”); see also United States v. Wuliger, 981 F.2d 1497, 1503 (6th Cir.1992) (failing to instruct on only defense was plain error, and “tantamount to directing a verdict against the defendant”). In light of the evidence summarized above, the district court abused its discretion in refusing to give an entrapment instruction.
*729 Because I would reverse the judgment of the district court and remand for a new trial, I respectfully dissent.

. The majority assumes, as I do, that Kurt’s evidence was sufficient under the second element required for an entrapment instruction, i.e., lack of predisposition.

. The majority parts way with this dissent "because the record here demonstrates that the purpose of any such association would have been to carry out illegal acts.” Memo at 4 n. 2. But the majority can reach that conclusion only by discrediting Kurt's testimony to the contrary. It is not the court’s function to make such credibility determinations when deciding whether an entrapment instruction is warranted. See United States v. Spentz, 653 F.3d 815, 818 (9th Cir.2011) (holding that "[ojnly slight evidence," even "of doubtful credibility,” is “necessary to get the defense to the jury"), cert. denied, — U.S. —, 132 S.Ct. 1600, 182 L.Ed.2d 209 (2012).

. A reloader is a machine for manufacturing ammunition.

. The majority's error compounds the district court’s improper credibility determinations. Prior to denying the entrapment instruction, *728 the district court engaged in a lengthy weighing of the evidence that included numerous credibility determinations. For example, the district court stated that "it seems that the ruse or the story that he now says he made up when he was talking to the confidential informant really isn't credible,” and generally described Kurt’s story as "not credible.” By applying the wrong legal standard, the district court necessarily abused its discretion. See United States v. Gurolla, 333 F.3d 944, 956 (9th Cir.2003) ("The credibility of the defendant's explanations is a matter for the jury to determine.”); United States v. Sivilla, 714 F.3d 1168, 1173 (9th Cir.2013) (holding that the district court abused its discretion when it applied the wrong legal standard to determine if the requested instruction was warranted).

. There is nothing illegal in being an "armorer.”

. Kurt’s defense was plausible in part because his first two meetings with the informant were not' recorded. During the subsequent recorded conversations, Kurt spoke freely about obtaining firearms and other criminal activity. But the crux of his defense was that the informant had persuaded him, during the first two unrecorded conversations, to engage in criminal conduct. Thus his defense turned, in part, on a credibility contest between him and the informant about what was said during the first two conversations.