FILED

JUL 02 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WAYDE LYNN KURT,

Defendant - Appellant.

No. 12-30182

D.C. No. 2:10-cr-00114-WFN-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted April 11, 2013
Seattle, Washington

Before: TASHIMA and CALLAHAN, Circuit Judges, and COLLINS, District
Judge.[**]

Appellant Wayde Lynn Kurt appeals his conviction for possession of

firearms after a prior felony conviction in violation of 18 U.S.C. §§ 922(g)(1),

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Raner C. Collins, District Judge for the U.S. District
Court for the District of Arizona, sitting by designation.

1

924. He argues that the district court erred by refusing to give entrapment instructions, refusing to admit certain photographs and book excerpts, and applying two sentencing enhancements. We review the district court's decision on whether a defendant has presented sufficient evidence to warrant an instruction and the court's evidentiary rulings for abuse of discretion. *United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1600 (2012); *United States v. Waters*, 627 F.3d 345, 351-52 (9th Cir. 2010). "We review the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error." *United States v. May*, 706 F.3d 1209, 1212 (9th Cir. 2013) (internal quotation marks omitted). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

I

The district court found that no reasonable jury could conclude that Kurt was entrapped and declined to give Kurt's proposed entrapment instructions. Generally, a defendant is entitled to an entrapment instruction if he or she presents sufficient evidence of inducement and lack of predisposition such that a reasonable

[1] Because the parties are familiar with the facts of the case, we repeat only those facts necessary to explain our decision.

2

jury could find in his or her favor. *Spentz*, 653 F.3d at 818. "Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility." *Id.* Regardless of whether Kurt presented sufficient evidence of lack of predisposition, we conclude that he did not present sufficient evidence of inducement to warrant the entrapment instructions.

"Inducement is any government conduct creating a substantial risk that an otherwise law-abiding person would commit a criminal offense." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 648 (9th Cir. 2006) (internal quotation marks omitted). It generally "take[s] the form of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of [a non-criminal] reward, or pleas based on need, sympathy or friendship." *Spentz*, 653 F.3d at 820 n.4. Here, Kurt admitted that the government informant did not induce him to use firearms through threats, harassment, sympathy, or friendship. Instead, he suggested that the informant persuaded him to do so by requesting that Kurt become the "armorer" of a new extremist group and through "inaction" by failing to introduce Kurt to an existing extremist group.

In these circumstances, we note that the safer practice may have been to give the instructions. We nonetheless conclude that even if Kurt's testimony is credited,

the informant's alleged conduct was not inducement because it essentially constitutes promises of a criminal reward. *See Spentz*, 653 F.3d at 820 n.4. Kurt provided no evidence of government pressure or incentives that would prompt a law-abiding person to commit the offense. Opportunity, alone, does not constitute inducement and accordingly, the district court did not abuse its discretion.[2]

## II

The district court excluded photographs of a victim of an assault by a group of extremists because the photographs were "not necessary" in light of other evidence about the assault. Although a defendant is generally entitled to defend against the government's accusations by presenting corroborative evidence, *see DePetris v. Kuykendall*, 239 F.3d 1057, 1062-63 (9th Cir. 2001), the district court did not abuse its discretion here. The district court was entitled to exclude the photographs under Federal Rule of Evidence 403 because they were cumulative of

---

[2] We recognize that mere association with members of an extremist group is not illegal. We part ways with our dissenting colleague because the record here demonstrates that the purpose of any such association would have been to carry out illegal acts. Thus, even if we credit Kurt's narrative, the government was not attempting to take advantage of a non-criminal motive. The promise of joining a criminal conspiracy cannot constitute inducement because it would not induce a law-abiding person to commit a crime. Kurt's uncommunicated, subjective intentions once he joined the conspiracy are not relevant to whether the government's conduct induced him to possess firearms.

the substantial testimony about the assault from both government and defense witnesses and because any additional probative value was minimal.

## III

The district court also excluded excerpts from extremist books because they were irrelevant to entrapment, which was the sole issue in dispute. We agree with the district court because the book excerpts did not make Kurt's narrative any more probable than the government's narrative. Kurt may have referenced the ideas in the books because – as he claimed – he was playing along with the informant to obtain information about extremists so that he could protect the assault victim from them. It is equally plausible, however, that Kurt was referring to those ideas because – as the government claimed – he agreed with them and wished to carry out some of the acts described in the books. Thus, the excerpts did not make any consequential fact more or less probable than it would be in their absence, and the district court did not abuse its discretion. *See* Fed. R. Evid. 401.

## IV

The district court applied a four-level enhancement to Kurt's base offense level for possessing a firearm in connection with another felony under U.S.S.G. § 2K2.1(b)(6)(B). It found that although Kurt had no "specific plan as to exactly

what was going to be done," he had made so many references to violent or terrorist acts that it was clear that he was making preparations to commit such an act.

In *United States v. Jimison*, 493 F.3d 1148, 1149 (9th Cir. 2007) (citing *United States v. Dodge*, 61 F.3d 142, 146 (2d Cir. 1995)), we indicated that in order for the enhancement to apply, the defendant "must have formed a firm intent to use the gun for a felonious purpose." In doing so, we cited the Second Circuit's decision in *Dodge* with approval. *Id.* (citing 61 F.3d at 146). In *Dodge*, 61 F.3d at 146-47, the Second Circuit affirmed the district court's imposition of the enhancement based on the defendant's statements indicating that he intended to blow up a structure with a bomb. In doing so, the district court rejected the defendant's suggestion that he merely intended to detonate the bomb "in the woods for fun." *Id.* at 147. Similarly, the district court did not abuse its discretion here where Kurt made numerous statements indicating that he had a firm intent to commit terrorist acts – any one of which would have been a felony – despite the fact that they did not all relate to one, specific plan.

V

The district court also imposed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, finding that Kurt attempted to influence the informant and provided false testimony. We have previously upheld a district

6

court's imposition of the enhancement where a defendant distributed an informant's cooperating agreement to third parties with the words "rat" and "snitch" written on it. *United States v. Jackson*, 974 F.2d 104, 106 (9th Cir. 1992). Here, Kurt attempted to contact a third party and urge him to "expose" the informant and "derail the government agenda at every turn." Without considering whether Kurt provided false testimony, we find that the district court did not abuse its discretion when it imposed the enhancement based on Kurt's attempt to influence the informant through a third party.

**AFFIRMED.**

*United States v. Kurt*, **No. 12-30182**

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's resolution of the evidentiary and sentencing issues, but I disagree with its ruling on the defendant's entitlement to an entrapment instruction. In reaching its conclusion that Kurt was not entitled to an entrapment instruction, the majority – like the trial court – improperly weighs the evidence and makes credibility determinations, assessments which should be reserved for the jury. I therefore respectfully dissent from Part I of the majority's Memorandum.

1.      Kurt's only defense was entrapment. He testified that he had been a white supremacist for several years but that, after witnessing the brutal beating of an acquaintance, he renounced his allegiance to the movement. He then decided to use his connections to monitor the activities and threat level of supremacist groups in the region. Kurt became particularly concerned about an offshoot of the Northwest Front, a leading white supremacist organization, after speaking with the government informant. He testified that his primary motivation was to keep tabs on the Northwest Front out of concern for Anthony Johnson, the man who had been severely beaten. Kurt argued that he was eventually entrapped by the informant into obtaining weapons.

2.      The majority first concludes that any government inducement was legally insufficient because it "essentially constitute[d] promises of a criminal

reward." Memo. at 4.[1]  This conclusion misreads the record and draws an

impermissible factual inference.  There is nothing illegal about joining a white

supremacy organization.  More importantly, Kurt repeatedly testified that he never

intended to commit criminal acts with the Northwest Front.[2]  For example, Kurt

testified that he obtained a reloader[3] so that he could "appear to be" part of the

group, but that he "had no inclination, [and] was playing a game."  He went on to

explain that the only reason he wanted to meet members of the group was to

"assess the threat that they would be to Anthony."  In short, under Kurt's version

of the story, he was not motivated by the promise of further criminal activity.

Although the majority purports fully to credit Kurt's testimony, it does just the

_____

[1]     The majority assumes, as I do, that Kurt's evidence was sufficient under the second element required for an entrapment instruction, *i.e.*, lack of predisposition.

[2]     The majority parts way with this dissent "because the record here demonstrates that the purpose of any such association would have been to carry out illegal acts."  Memo at 4 n.2.  But the majority can reach that conclusion only by discrediting Kurt's testimony to the contrary.  It is not the court's function to make such credibility determinations when deciding whether an entrapment instruction is warranted.  *See United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011) (holding that "[o]nly slight evidence," even "of doubtful credibility," is "necessary to get the defense to the jury"), *cert. denied*, 132 S. Ct. 1600 (2012).

[3]     A reloader is a machine for manufacturing ammunition.

-2-

opposite when it discredits his alleged motives.[4]

**3.** The majority also concludes that there was "no evidence of government pressure or incentives." Memo. at 4. But this assertion ignores substantial evidence in the record. As an initial matter, Kurt stated that the informant repeatedly encouraged him to join the Northwest Front. More importantly, he testified that the informant asked him to be the armorer[5] for a Northwest Front offshoot, to obtain a reloader, and to obtain firearms. Indeed, Kurt testified that he had told the informant "on several occasions" that he was not permitted to possess firearms, but that the informant nevertheless "continued to encourage [him] to obtain weapons . . . on several occasions." The informant had also proposed – at the direction of the FBI – most of the meetings with Kurt, and

---

[4] The majority's error compounds the district court's improper credibility determinations. Prior to denying the entrapment instruction, the district court engaged in a lengthy weighing of the evidence that included numerous credibility determinations. For example, the district court stated that "it seems that the ruse or the story that he now says he made up when he was talking to the confidential informant really isn't credible," and generally described Kurt's story as "not credible." By applying the wrong legal standard, the district court necessarily abused its discretion. *See United States v. Gurolla*, 333 F.3d 944, 956 (9th Cir. 2003) ("The credibility of the defendant's explanations is a matter for the jury to determine."); *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (holding that the district court abused its discretion when it applied the wrong legal standard to determine if the requested instruction was warranted).

[5] There is nothing illegal in being an "armorer."

had proposed the target shooting trip that led to Kurt's arrest.

The majority might not think this evidence amounts to "pressure" or "persuasion," but that question was for the jury to decide. As the majority recognizes (but fails to heed), "[o]nly slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011). Finally, although the informant denied having encouraged Kurt to obtain firearms, this contradiction simply creates a dispute of fact.[6] *See United States v. Kessee*, 992 F.2d 1001, 1004 (9th Cir. 1993) ("[S]ince Kessee testified under oath to an account which, if true, could justify a finding of entrapment, he established a genuine issue of fact.").

• ● •

Where a defendant, such as Kurt, raises only a single defense, the district court should be especially vigilant about protecting the due process right to present that defense. Rather than safeguarding this right, the district court effectively

---

[6] Kurt's defense was plausible in part because his first two meetings with the informant were not recorded. During the subsequent recorded conversations, Kurt spoke freely about obtaining firearms and other criminal activity. But the crux of his defense was that the informant had persuaded him, during the first two unrecorded conversations, to engage in criminal conduct. Thus his defense turned, in part, on a credibility contest between him and the informant about what was said during the first two conversations.

entered a directed verdict for the government. *See Bradley v. Duncan*, 315 F.3d 1091, 1099 (9th Cir. 2002) ("[T]he refusal to instruct on entrapment deprived Bradley of his only defense and, as a result, of due process."); *see also United States v. Wuliger*, 981 F.2d 1497, 1503 (6th Cir. 1992) (failing to instruct on only defense was plain error, and "tantamount to directing a verdict against the defendant"). In light of the evidence summarized above, the district court abused its discretion in refusing to give an entrapment instruction.

Because I would reverse the judgment of the district court and remand for a new trial, I respectfully dissent.