**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10607 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00140-KJD-GWF-1 |
| v. | |
| CHRISTOPHER SANGALANG, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10617 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00140-KJD-GWF-2 |
| v. | |
| DEANDRE PATTON, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10001 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00163-JCM-GWF-3 |
| v. | |
| DEANDRE PATTON, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10035 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00163-JCM-GWF-1 |
| v. | |
| CHRISTOPHER SANGALANG, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10322 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00163-JCM-GWF-2 |
| v. | |
| ALFREDO FLORES, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted May 12, 2014
San Francisco, California

Before: SILVERMAN and GOULD, Circuit Judges, and LEMELLE, District Judge.[**]

Defendants Christopher Sangalang, Deandre Patton, and Alfredo Flores appeal their criminal convictions after two jury trials, arising from the "Sin City Ink" undercover operation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Judge Mahan presided over the first trial, with charges related to a fictitious stash house robbery involving all three Defendants. Judge Dawson presided over the second trial, with charges related to gun and drug sales before the fictitious stash house robbery, involving Sangalang and Patton. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The ATF agents' conduct in the Sin City Ink operation does not satisfy the "extremely high standard" required to dismiss an indictment for outrageous government conduct. *See United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (internal quotation marks omitted). To facilitate the undercover sting transactions, ATF agents set up a tattoo parlor based on Agent Gomez's first-hand knowledge of the types of venues where known gang members congregated, and

---

[**] The Honorable Ivan L.R. Lemelle, District Judge for the U.S. District Court for the Eastern District of Louisiana, sitting by designation.

used a confidential informant, Richard Beckworth, a known gang member with connections to other known gang members. The inception of the ATF's Sin City Ink operation did not target a "bad area where persons engaged in criminal activity were likely to gather." *See id.* at 305 (internal quotation marks omitted). This casting of such a wide net was not a feature of the sting operations in this case, where the ATF aimed at known gang members of gangs that already were known to be involved in drug and gun sales and violent crime. Agent Gomez developed personal relationships with Defendants over months, and the ATF agents relied on Defendants' "representations of their past criminal conduct" and their enthusiasm about planning and participating in the stash house robbery. *Id.* at 307 n.10. As in *Black*, "the existence of tape and video recordings to prove what was actually said and done has weighed heavily in our review of the record," *id.* at 310, and the ATF agents' conduct here, including their supervision of Beckworth, was not outrageous under the totality of the circumstances. *See id.* at 304.

The district courts did not abuse their discretion in denying Defendants' Federal Rule of Criminal Procedure 33 motions for a new trial based on newly discovered evidence because Defendants cannot show that the evidence is material, not cumulative, and that "a new trial would probably result in acquittal." *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). In both trials, the

-4-

jury watched extensive recordings of Sangalang and Patton selling guns and drugs to undercover ATF agents. Beckworth's conduct in facilitating those transactions was known to the jury through defense counsel's impeachment of Agent Gomez and Beckworth, and the testimony of Ashley Gonzalez and Defendant Patton. This is not a case where the outcome depended on Beckworth's credibility and the jury had before it plenty of evidence that Beckworth was not credible. *See United States v. Collins*, 551 F.3d 914, 924 (9th Cir. 2009). Cumulative evidence of Beckworth's lack of credibility would not indicate that "a new trial probably would result in an acquittal." *See United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003). Moreover, evidence of Beckworth's alleged conduct in subsequent sting operations in Texas might be relevant to the government's practices inducing crime, but would not be at all relevant to show an absence of Defendants' predisposition to do the crimes that they did in the sting. Defendants have not shown and cannot show that the alleged Texas evidence would have been relevant to both elements of an entrapment defense. *See United States v. Spentz*, 653 F.3d 815, 818 (9th Cir. 2011). This evidence did not warrant a new trial.

For similar reasons, the district courts did not err in denying Defendants' motions for a new trial based on alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Assessing Beckworth's alleged conduct in subsequent sting operations

in Texas "in the light of other evidence, not merely in terms of its probative value standing alone," we conclude that the omitted evidence is not sufficient to gain a new trial. *See United States v. Ross*, 372 F.3d 1097, 1107-08 (9th Cir. 2004). As discussed above, the government presented extensive video evidence of Sangalang and Patton's gun and drug transactions. Beckworth's conduct was thoroughly raised at trial. Because Beckworth's alleged Texas conduct is "similar to and cumulative" of the evidence of Beckworth's conduct presented at trial, there is no "reasonable likelihood" that the Texas evidence "could have changed the jury's verdict." *See United States v. Wilkes*, 662 F.3d 524, 536-37 (9th Cir. 2011). While Beckworth invoked his right to remain silent about his participation in the Sin City Ink operation in a subsequent Texas proceeding, we do not believe this fact creates a "reasonable probability" of a different outcome that "undermines our trust in the fairness of the trial and the resulting verdict." *See United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013). Defendants' *Brady* claim also shares the deficiencies of their newly discovered evidence argument. Defendants cannot show prejudice because the alleged Texas evidence only relates to government inducement, not Defendants' predisposition. *See Spentz*, 653 F.3d at 818.

The district court did not abuse its discretion in excluding Defendants' proposed expert witness in the stash house robbery trial on the basis that the

expert's testimony would not assist the jury as trier of fact. *See* Fed. R. Evid. 702; *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc). At trial, defense counsel stated that the expert would testify about (1) the handling and management of CIs; (2) "braggadocio" of gang members; and (3) documentation and the importance of writing reports. The district court's conclusion that the jury could understand these concepts without the expert's opinion was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *See United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

The district courts properly conducted the three-part test for evaluating challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986). The record shows that the district courts did not clearly err in concluding that the government's race-neutral justifications were credible, and were not pretextual, under the totality of the relevant facts. *See Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc). Comparative juror analysis also does not show purposeful discrimination in this case. *Id.* at 360.

Without deciding whether the district court erred in admitting Defendants' prior gun and drug sales under the "inextricably intertwined" exception to Federal Rule of Evidence 404(b), we conclude that those acts were admissible to show

Defendants' intent or predisposition where entrapment is at issue.[1] *See United States v. Simtob*, 901 F.2d 799, 807 (9th Cir. 1990). The prior gun and drug sales were close in time to the planned stash house robbery, and relevant to show intent or predisposition to steal drugs or money from the stash house. *See id.* It is also reasonable to think that people who sell weapons might use the weapons for some purpose other than sale. Because predisposition was a "central issue" in this case, the probative value of the prior gun and drug sales outweighed any potential prejudice to Defendants. *See id.* at 808.

There is no clear error in the district courts' factual finding that the ATF agents did not destroy the surveillance tapes of the tattoo parlor in bad faith. *See United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). There is no evidence that the ATF agents knew of exculpatory evidence on the destroyed tapes, and the ATF agents explained that they only retained recordings that they believed had evidentiary value. The district courts did not abuse their discretion in denying Defendants' request for an adverse inference jury instruction. *See id.* at 1173.

The district courts did not abuse their discretion in permitting the use of transcripts as a listening aid to the video tapes shown at trial. *See United States v.*

---

[1] We may affirm the district court's admission of evidence on any basis supported by the record that has been briefed on appeal. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010).

*Delgado*, 357 F.3d 1061, 1070 (9th Cir. 2004). There was no evidence that the transcripts were inaccurate, and the ATF agents testified as to their accuracy. Both district courts admonished the jury that the tapes were the evidence, not the transcripts; defense counsel had the opportunity to cross-examine the ATF agents about the transcripts; and defense counsel could have raised inconsistencies in argument over the meaning of the conversations on the tapes. *Id.* The district courts were "not required as a matter of law to listen to tapes prior to their being played to the jury or determine whether a transcript is accurate before permitting a jury to look at it." *See United States v. Tisor*, 96 F.3d 370, 377 (9th Cir. 1996).

We reject Defendants' cumulative error argument.

**AFFIRMED.**