**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

JOLYNN MAY,
  *Defendant-Appellant.*

No. 12-30016

D.C. No.
3:11-cr-05073-
BHS-2

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

JASON MAY,
  *Defendant-Appellant.*

No. 12-30021

D.C. No.
3:11-cr-05073-
BHS-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
November 7, 2012—Seattle, Washington

Filed February 12, 2013

Before:  William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and Gordon J. Quist, Senior District Judge.[*]

Opinion by Judge Quist

---

## SUMMARY[**]

---

### Criminal Law

The panel affirmed sentences but vacated a portion of a restitution order in a case in which the defendants were convicted of receipt of stolen mail and mail theft.

The panel held that the district court did not err by including in the loss calculation expenses the United States Postal Service incurred to avert future mail thefts.  The panel wrote that uncharged mail thefts that occurred prior to the date the USPS changed its delivery policy are, simultaneously with the pre-change possession (receipt) offenses, relevant conduct the district court may consider; and that the expenses were a reasonably foreseeable pecuniary harm resulting from the defendants' ongoing crime spree of numerous and widespread thefts.

The panel held that the district court improperly ordered restitution for the expenses because the mail theft of which

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the defendants were convicted occurred after, and could not have caused, the USPS's delivery procedure change. The panel wrote that the defendants' pre-change possession of stolen mail did not support the restitution order because it is clear that mail theft – not unlawful possession – caused the USPS to change its procedures.

---

## COUNSEL

Timothy R. Lohraff (argued), Law Office of Timothy R. Lohraff, P.S., Seattle, Washington, for Defendant-Appellant Jason May.

Linda R. Sullivan (argued) and Alan Zarky, Federal Public Defender, Tacoma, Washington, for Defendant-Appellant Jolynn May.

Jenny A. Durkan, United States Attorney; S. Kate Vaughan, Assistant United States Attorney, Teal Luthy Miller (argued), Assistant United States Attorney, Seattle, Washington, for Plaintiff-Appellee.

---

## OPINION

QUIST, District Judge:

Defendants Jason and Jolynn May pled guilty to one count of receipt of stolen mail and one count of mail theft, in

violation of 18 U.S.C. § 1708.[1]   The district court's loss calculation included certain expenses the United States Postal Service (the "USPS") incurred to avert future mail thefts.  On appeal, the Mays argue that the district court erred by including these expenses as loss, for purposes of both sentencing and  restitution.  We reject the Mays' argument with regard to the loss calculation under the Sentencing Guidelines, but conclude that the district court improperly ordered restitution for the USPS's expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, during the holiday season, the Mays engaged in a series of mail thefts in the Vancouver, Washington area.  On at least four occasions that month, the Mays drove through Vancouver neighborhoods on

---

[1] 18 U.S.C. § 1708 provides, in relevant part:

> Whoever steals, takes, or abstracts . . . from or out of any . . . mail receptacle, or any mail route or other authorized depository for mail matter . . . any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag or mail, any article or thing contained therein . . . ; or
>
> . . . .
>
> Whoever . . . receives . . . or unlawfully has in his possession any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, . . . knowing the same to have been stolen, taken, embezzled, or abstracted—
>
> Shall be fined under this title or imprisoned not more than five years, or both.

"Christmas shopping" trips—as the Mays dubbed them—in search of packages to steal. Mychal Lecouris accompanied the Mays on several occasions. During these trips, Jolynn drove the Mays' Volkswagen, with Jason in the passenger seat and Lecouris in the back, while they looked for packages on porches, in doorways, or in community mailboxes. When they spotted a package, Jason or Lecouris would grab it from the porch or doorway, return to the car. They would usually unwrap it and throw the packaging out the car window. If the target package was in a community mailbox, Jason would use vice-grips to twist the lock and would then remove the package from the parcel locker.

On December 24, 2010, based on a witness tip, police officers arrested the Mays as they sat parked in their Volkswagen at their apartment. A search of the Mays' apartment and Volkswagen revealed evidence of stolen property, including children's toys and books, medications, and airline uniforms, some of which were still in priority mail boxes with missing address labels.

The Mays were charged in a two-count indictment with receipt of stolen mail and mail theft in violation of 18 U.S.C. § 1708. Count 1 alleged that the Mays unlawfully possessed stolen mail "no later than December 2, 2010, and continuing through at least December 24, 2010." Count 2 alleged that the Mays committed mail theft on December 24, 2010. The Mays pled guilty to both counts pursuant to written plea agreements, in which they admitted to stealing mail on at least four occasions during December 2010.

The Mays' presentence reports identified the USPS as a victim and recommended that the loss calculation include $69,753 in expenses the USPS incurred to prevent additional

mail thefts.  The district court held a hearing to establish loss for sentencing and restitution, at which the government presented testimony from Angela Pacuzca, the acting manager of the East Vancouver Post Office ("EVPO") during time the Mays committed their thefts.  Ms. Pacuzca testified that the EVPO serves customers in the zip codes affected by the Mays' thefts and that from December 13, 2010 through December 19, 2010, the EVPO received a "tidal wave" of customer complaints about undelivered parcels.  In response to the increased volume of complaints, Ms. Pacuzca and the Vancouver Postmaster changed the EVPO's policy for parcel deliveries to provide that parcels would be delivered only to customers who were home and that all undelivered parcels would be returned to the EVPO for customer pick-up.  The change resulted in less than ten percent of all parcels being delivered and required the EVPO to extend its business hours and increase staffing to accommodate customer parcel pick-up traffic.  The policy change remained in effect until December 24, 2010.

The district court concluded that the USPS's expenses should be included as loss under the United States Sentencing Guidelines ("U.S.S.G.") and applied an eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E) for loss exceeding $70,000 (consisting of the USPS's expenses and $2,104 in loss suffered by unidentified postal customers). The district court further concluded that the USPS's expenses should be considered a loss for purposes of restitution and ordered the Mays to pay $69,778 in restitution.[2]

---

[2] This amount consisted of the USPS's expenses and a $25 loss of a single mail theft victim.

## DISCUSSION

## I. Sentencing

The Mays argue that the district court erred in including the USPS's expenses as loss under U.S.S.G. § 2B1.1 because they were incurred solely to deter future mail thefts, rather than to address or mitigate the effects of the Mays' completed offenses. Thus, the Mays argue, their conduct did not proximately cause the USPS's expenditures.

We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).

We begin with loss under the Sentencing Guidelines, which is "the greater of actual or intended loss." U.S.S.G. § 2B1.1, cmt. n. 3(A). "Actual loss"—at issue in this appeal—"means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n. 3(A)(i). "Pecuniary harm" is "harm that is monetary or that otherwise is readily measurable in money . . . [but] does not include emotional distress, harm to reputation, or other non-economic harm." U.S.S.G. § 2B1.1 cmt. n. 3(A)(iii). Harm is reasonably foreseeable if "the defendant knew or, under the circumstances, reasonably should have known, [that the harm] was a potential result of the offense." U.S.S.G. § 2B1.1, cmt. n. 3(A)(iv).

In the context of sentencing, a district court is not limited to offense conduct, but rather may consider all of the

defendant's "relevant conduct" in calculating loss under § 2B1.1. U.S.S.G. § 1B1.3. Pertinent to this appeal, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction," U.S.S.G. § 1B1.3(a)(1)(A), and "all harm that resulted from [such] acts and omissions." U.S.S.G. § 1B1.3(a)(3). Because relevant conduct may include a broader range of conduct than the underlying offense conduct, a district court may "properly consider[] charged, uncharged, and acquitted conduct." *United States v. Peyton*, 353 F.3d 1080, 1089 (9th Cir. 2003), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc) (per curiam). Finally, this court has held that the term "resulted from" in U.S.S.G. § 1B1.3(a)(3) implies legal causation between the defendant's conduct and the resulting harm. *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000).

Were we confronted solely with the Mays' December 24, 2010, mail theft offense, we would have no basis to conclude that the Mays' conduct caused the USPS's expenses because the EVPO changed its delivery policy on December 20—four days before the charged theft offense. However, the uncharged mail thefts that occurred prior to December 20, simultaneously with the possession offenses, are relevant conduct that we may consider. This conduct is relevant not only because the Mays admitted to committing the thefts in their plea agreements, but also because it provided the government the evidence it needed to prove the Mays knowingly possessed stolen mail, i.e., the Mays knew they possessed stolen mail because they stole it.

The question, then, is whether it was reasonably foreseeable that the USPS would react to their thefts by switching its parcel delivery policy to customer pick-up to ensure that its customers received their parcels. On this issue, the district court said:

> There's no doubt in my mind that it was foreseeable by these defendants that their activity had been so extensive in the days leading up to Christmas that the post office would find itself compelled to make temporary and expensive changes to the service as a result of the activity. Therefore, the distinction of costs directly incurred to curb further loss is not a distinction that affects the answer to the question of whether the cost was a direct result of or proximately caused by the criminal conduct of the defendant[s].

The district court was not clearly erroneous in concluding that the expense the USPS incurred was a reasonably foreseeable pecuniary harm resulting from the Mays' actions. This is not a case of an isolated mail theft. Instead, each of the Mays' excursions involved numerous and widespread thefts, and each new excursion increased the likelihood that the USPS would take some action to respond to the surging "tidal wave" of customer complaints—perhaps by temporarily changing its parcel delivery procedure for the duration of the busy holiday delivery season or until the perpetrators were caught. We decline to wade into the murky waters of temporary versus permanent crime prevention measures as permissible loss, as the Mays would have us do, especially because we discern from the Sentencing

Guidelines no limitation, express or implied, placing such expenditures beyond the purview of § 2B1.1.[3]  Whether permanent crime prevention measures can be considered loss under § 2B1.1 is not an issue we need now address and is best left for examination in the context of the specific facts under which it may arise.  It suffices for purposes of the instant case that the USPS theft prevention measures were directed at the Mays' ongoing crime spree that concluded after the USPS changed its delivery procedures.

## II. Restitution

The Mays present two arguments on appeal concerning the restitution order.  First, they argue that the district court erred in ordering restitution for the USPS's expenses because they are consequential damages not permitted by the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  The Mays also argue that the restitution order is unlawful because the USPS's expenses did not result from

---

[3] The only authority the Mays cite for the proposition that crime prevention measures cannot be considered loss under the Sentencing Guidelines is *United States v. Wright*, 176 F. App'x 373 (4th Cir. 2006) (per curiam), an unreported Fourth Circuit decision.  *Wright* is not at all instructive on the issue.  First, the court's discussion of the victim's post-burglary security costs was in the context of restitution, not sentencing. Moreover, the opinion offers nothing of substance in terms of analysis, as the court merely noted the government's agreement that such costs were "consequential damages that are not properly included in the restitution order."  *Id.* at 375.  In contrast, in *United States v. Warr*, 530 F.3d 1152 (9th Cir. 2008), we observed that the 2001 Sentencing Guidelines amendment defining "loss" under § 2B1.1 as "the reasonably foreseeable pecuniary harm that resulted from the offense" abrogated the portion of *United States v. Newman*, 6 F.3d 623 (9th Cir. 1993), holding that "loss" does not encompass "consequential losses."  *Id.* at 1159 n.7.  Thus, we have recognized that loss under § 2B1.1 may include consequential loss.

conduct underlying an offense of conviction. We find the latter argument persuasive and, therefore, address only that argument.

The Mays did not raise their offense of conviction argument in the district court. However, the question presented is purely one of law, requiring no further factual development. We will consider such a claim when raised for the first time on appeal. *United States v. Baker*, 25 F.3d 1452, 1456 (9th Cir. 1994).

This court's precedents firmly hold that a court may award restitution under the MVRA only for loss that flows directly from "'the specific conduct that is the basis of the offense of conviction.'"[4]  *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir. 2001) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)); *see also United States v. Baker*, 25 F.3d 1452, 1457 (9th Cir. 1994) (noting that "a district court may not order restitution for any loss beyond that caused by the offense of which the defendant was convicted"). Thus, a court is authorized to order restitution "for the offense of conviction and not for other related offenses of which the defendant was not convicted." *United States v. Batson*, 608 F.3d 630, 636 (9th Cir. 2010).

The district court's causation analysis for both sentencing and restitution purposes hinged on the Mays' mail thefts. But the mail theft charge set forth in Count 2 charged the Mays

---

[4] An exception exists for conduct beyond the offense of conviction if the offense "involves as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663A(a)(2); *see United States v. Napier*, 463 F.3d 1040, 1046 (9th Cir. 2006). The offenses at issue in this case contain no such element.

with mail theft only on December 24, 2010 and, as we have already noted, the December 24 mail theft could not have caused the USPS to change delivery procedures four days earlier, on December 20.  Recognizing this hitch in the district court's analysis, the government asserts that the conviction on Count 1 for receipt of stolen mail supports the restitution order because it alleges that the Mays possessed stolen mail prior to December 20, 2010.  What is clear both from the district court's reasoning and the facts surrounding the USPS's change in parcel delivery, however, is that mail theft—not unlawful possession—caused the USPS to change its procedures.  The Mays were not convicted of mail theft that occurred prior to December 20.

While it is true that the Mays' thefts were conduct surrounding their convictions for possession of stolen mail, the government was only required to prove that the mail was stolen, not that Mays stole it.  *See Randhawa v. Ashcroft*, 298 F.3d 1148, 1153 (9th Cir. 2002) (to prove possession of stolen mail, the government must show "(1) that the defendant possessed stolen mail; (2) that the defendant knew the mail was stolen; and (3) that the mail was, in fact, stolen").  Thus, the district court plainly erred in ordering restitution for the USPS's expenses.  *See United States v. Reed*, 80 F.3d 1419, 1422 (9th Cir. 1996) (holding that district courts cannot order "restitution for conduct that is related to the offense of conviction, but that is not an element of the offense").

The government argues *United States v. Bachsian*, 4 F.3d 796 (9th Cir. 1993), is controlling because in *Bachsian*, this court rejected the defendant's argument that a conviction for possession of stolen goods cannot support a restitution order because theft of the goods, rather than possession, causes the

loss. *Bachsian* has no application to the specific restitution issue before us. The court in *Bachsian* concluded that the defendant's possession of the stolen gloves resulted in loss because those gloves were the only gloves that were not recovered. *Id.* at 800. In other words, the possession deprived the lawful owner of the gloves. *Bachsian* thus deals with loss caused by possession of the stolen object and would apply to this case if we were concerned with loss resulting from the Mays' possession of the stolen mail, but that is not our issue.

## CONCLUSION

For the foregoing reasons, we affirm the Mays' sentences but vacate that portion of the restitution order awarding restitution for the USPS's expenses of $69,753.

## AFFIRMED IN PART AND VACATED IN PART.