**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

YIJUN ZHOU,
*Defendant-Appellant.*

No. 14-50288

D.C. No.
2:13-cr-00766-PSG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted April 6, 2016
Pasadena, California

Filed September 27, 2016

Before: A. Wallace Tashima, Barry G. Silverman,
and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Graber;
Dissent by Judge Tashima

**SUMMARY**[*]

**Criminal Law**

The panel affirmed the district court's restitution order in a case in which the defendant, who pled guilty to unauthorized use of access devices, used fraudulent credit cards at a Target store in Colorado and at Nordstrom stores in California.

The defendant argued for the first time on appeal that because the offense of conviction covered only the Nordstrom charges, and the Mandatory Victims Restitution Act of 1996 authorizes restitution only to victims of the offense, the district court erred by awarding restitution to victims of both the Nordstrom and Target purchases.

Because the defendant did not raise the issue before the district court, the panel reviewed for plain error. The panel clarified that although this court in some older cases used the "decline to consider" formulation where a newly-raised issue hinged on a factual dispute, that formulation is best understood as an application of the "plain error" standard.

The panel concluded that, for purposes of plain-error review, the Target charges occurred within the indictment period. The panel explained that the defendant did not plead guilty only to the Nordstrom allegations, and that the fraudulent Target charges fit within the scope of the count to which he pled guilty. The panel wrote that because the Nordstrom charges were sufficient to establish a factual basis

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for the defendant's crime, the government was not required to mention the Target charges at the plea colloquy.

Because any error was not plain, the district court did not decide definitively whether the district court erred.

In a concurring opinion, Judge Graber wrote separately to question the validity of this court's case law with respect to the standard of review applicable to arguments raised for the first time on appeal by criminal defendants. She wrote that a line of this court's cases holding that this court is not limited to plain error review where the appeal presents a "pure question of law" and there is no prejudice to the opposing party is contrary to Fed. R. Crim. P. 52(b), Supreme Court precedent, and the practice of sister circuits.

Dissenting, Judge Tashima wrote that both the text of the indictment and the record – including the plea colloquy and the presentence investigation report – show that the Target charges did not form the basis of the offense of conviction.

_____

**COUNSEL**

Jonathan D. Libby (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

Jean-Claude Andre (argued), Assistant United States Attorneys; Robert E. Dugdale, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

_____

**OPINION**

GRABER, Circuit Judge:

Defendant Yijun Zhou used fraudulent credit cards at a Target store in Colorado and at Nordstrom stores in California to buy items worth almost $150,000. The government indicted him on one count of unauthorized use of access devices. Defendant pleaded guilty to that count. At the plea colloquy, the government stated that it would prove the fraudulent Nordstrom charges at trial but did not mention the Target charges. At sentencing, the district court imposed restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA"), without objection, for both the Nordstrom charges and the Target charges. Defendant timely appeals, arguing for the first time on appeal that the district court improperly ordered restitution with respect to the Target charges. We hold that the district court did not plainly err in imposing restitution and, therefore, affirm.

FACTUAL AND PROCEDURAL HISTORY

Defendant was indicted on one count of unauthorized use of access devices, and aiding and abetting others to do so, in violation of 18 U.S.C. §§ 2(a) and 1029(a)(2). The indictment charged:

> Beginning . . . no earlier than on or about March 13, 2011, and continuing through on or about December 17, 2011, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant Yijun Zhou, together with others . . . , aiding and abetting one another, . . . knowingly and with

intent to defraud used unauthorized access
devices, . . . specifically, credit cards, . . . and
by such conduct obtained things of value . . .
together totaling $1,000 or more.

After Defendant pleaded guilty without the benefit of a plea
agreement, the government stated that it would prove at trial
that Defendant used fraudulent credit cards to make purchases
at Nordstrom stores in California. Defendant understood
those allegations and agreed that they were true. He also
answered "Yes" to the question: "Are you pleading guilty
because you did the things charged in Count [One] of the
indictment?" The court also advised Defendant that the
amount of restitution could be as high as $160,000.

The probation office prepared a presentence report and an
accompanying letter recommending a Guidelines range of 30
to 37 months, a sentence of 37 months' imprisonment, and
restitution of $146,725.02, payable in varying amounts to 30
identified victims. The restitution amount, and the identified
victims, concerned two different sets of events. About half of
the restitution amount stemmed from Defendant's fraudulent
credit card purchases at Nordstrom stores in California. The
remainder related to Defendant's fraudulent credit card
purchases at a Target store in Colorado. Both in their written
memoranda and in their oral presentations at the sentencing
hearing, the parties disputed the calculation of the Guidelines
range and the appropriate term of imprisonment, but neither
party challenged the award of restitution.

At sentencing, the district court ruled in Defendant's
favor on one of the disputed issues and ruled in the
government's favor on the other disputed issue. The court
calculated the Guidelines range to be 24 to 30 months, and it

imposed a sentence of 30 months' imprisonment. The court also ordered Defendant to pay $146,725.02 in restitution, in accordance with the list created by the probation office, which included the victims of both the Nordstrom and Target purchases.

Defendant timely appeals, challenging only the restitution order. He argues that the district court erred by awarding restitution to persons who were not victims of the offense of conviction, because the offense of conviction covered only the Nordstrom charges and the MVRA authorizes restitution only to victims of the offense. Defendant acknowledges, as he must, that he did not raise that argument (or any argument concerning restitution) to the district court.

## STANDARD OF REVIEW

Because Defendant did not raise the issue before the district court, we review for plain error. The ordinary rule in criminal cases—established by Federal Rule of Criminal Procedure 52(b) and by Supreme Court precedent—is that "plain error" review applies to arguments raised for the first time on appeal. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Olano*, 507 U.S. 725 (1993). Time and again, we have reviewed challenges to restitution orders—made for the first time on appeal—for plain error. *See, e.g.*, *United States v. Rizk*, 660 F.3d 1125, 1136 (9th Cir. 2011) (reviewing for plain error a dispute about the propriety of restitution); *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1162 (9th Cir. 2010) ("[W]e review only for plain error when the defendant failed to object to the [restitution order] in the district court."). Indeed, in *United States v. Bright*, 353 F.3d 1114, 1120 (9th

Cir. 2004), the defendant raised the same argument that Defendant makes here—that "the amount of restitution imposed was excessive because the court was authorized to order restitution only for the counts of conviction"—and we held that the defendant "did not challenge the amount of the restitution order before the district court, so we review [the] claim for plain error." *See also United States v. Weinstein*, 834 F.2d 1454, 1456 (9th Cir. 1988) (reviewing for "plain error" whether the restitution amount "exceeds the actual damages or loss occasioned by the offense of which [the defendant] was convicted"). As a three-judge panel, we must apply the same standard of review—plain error. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

The government points to a subset of our cases where we have "decline[d] to consider" an argument that hinged on an unresolved factual issue. *E.g.*, *United States v. Napier*, 463 F.3d 1040, 1045–46 (9th Cir. 2006). The better reading of those cases is not as an *exception* to the "plain error" standard, but as an *application* of the "plain error" standard. At a minimum, an error that hinges on a factual dispute is not "obvious" as required by the "plain error" standard. *See, e.g.*, *United States v. Scrivner*, 114 F.3d 964, 968 (9th Cir. 1997) ("[F]actual disputes do not rise to the level of plain error." (internal quotation marks omitted)). Accordingly, by the time we determine that an issue hinges on a factual dispute, we have concluded that any error is not "plain." Whether we "decline[d] to consider" an argument that hinges on a factual dispute or simply hold that any error is not plain, the result—affirming the district court's decision—is the same. We clarify that, if the government thinks that a newly raised issue hinges on an unresolved factual dispute, the proper heading for that argument is under the "plain error" standard. Although we occasionally used the "decline to consider"

formulation in some older cases, that formulation is best understood as an application of the "plain error" standard.

For his part, Defendant points to cases that, he contends, applied "de novo" review and rejected the application of "plain error" review. Defendant's argument fails at the outset. In the two cases cited by Defendant where we applied "de novo" review, *United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012); *United States v. Reed*, 80 F.3d 1419 (9th Cir. 1996),[1] the government did not request that we apply "plain error" review, so we had no occasion to consider the issue. Accordingly, those cases do not—and as three-judge decisions could not—overrule the earlier authority, such as *Weinstein*, requiring that we apply "plain error" review to non-jurisdictional arguments raised for the first time on appeal.[2] *Miller*, 335 F.3d at 899–900.

---

[1] Defendant also cites *United States v. May*, 706 F.3d 1209 (9th Cir. 2013). That case is inapposite. We never stated the applicable standard of review, and we concluded that "the district court *plainly erred* in ordering restitution for [a company's] expenses." *Id.* at 1215 (emphasis added). In short, if anything, *May* supports the conclusion that "plain error" review applies here.

[2] As the Supreme Court recently reiterated, de novo review—and not "plain error" review—applies to "a nonwaivable limit on federal courts' subject-matter jurisdiction." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *see United States v. Pocklington*, 792 F.3d 1036, 1039–40 (9th Cir. 2015) (applying the rule); *United States v. Doe*, 366 F.3d 1069, 1075–76 (9th Cir. 2004) (en banc) (same). But that exception has no application here because the district court clearly had subject matter jurisdiction to sentence Defendant and to impose restitution; Defendant challenges only the extent of restitution. *See Doe*, 366 F.3d at 1076–77 (describing the limited nature of this exception to plain-error review).

In one line of cases, we have held that "we are not limited to [the plain-error] standard of review where the appeal presents a pure question of law and there is no prejudice to the opposing party." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011). In those circumstances, "we possess the discretion to refrain from applying the default plain error standard of review." *Id.* Here, Defendant's argument requires that we apply the legal standard in the MVRA to the particular factual details in the record—the indictment, the plea colloquy transcript, the presentence report, and the sentencing transcript. In these circumstances, the issue is best characterized as a "mixed question of law and fact," not a "pure question of law." *See, e.g.*, *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (describing a "mixed question of law and fact" as "the application of a legal standard to a particular set of facts"). To the extent that we have discretion to apply a different standard of review, we decline to exercise it here. *Gonzalez-Aparicio*, 663 F.3d at 426–27. We see no compelling reason to depart from our established case law applying "plain error" review to the same type of argument raised by Defendant here.

## MERITS

"Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, we may then exercise our discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Myers*, 804 F.3d 1246, 1257 (9th Cir. 2015) (alterations and internal quotation marks omitted), *cert. denied*, 136 S. Ct. 1393 (2016). Here, any error is not plain, so the second criterion is not satisfied.

The MVRA provides that, in cases involving certain crimes (including unauthorized use of access devices), "the court shall order . . . that the defendant make restitution to the victim of the offense."   18 U.S.C. § 3663A(a)(1).**³**   The statute defines the term "victim" as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663A(a)(2).

This is not a "case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity." *Id.* Title 18 U.S.C. § 1029(a)(2) provides that whoever "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . shall, if the offense affects interstate or foreign commerce, be punished."   That statute does not have "as an element a scheme, conspiracy, or pattern of criminal activity." *Id.* § 3663A(a)(2); *see United States v. Gordon*, 480 F.3d 1205, 1211 (10th Cir. 2007) (holding that § 1029(a)(2) does not

---

**³** The statute also authorizes restitution to "persons other than the victim of the offense," if the parties so agree in a plea agreement.  18 U.S.C. § 3663A(a)(3).  Because there was no plea agreement here, that provision does not apply.

contain as an element a scheme, conspiracy, or pattern of criminal activity); *accord United States v. Acosta*, 303 F.3d 78, 87 (1st Cir. 2002); *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996). Accordingly, the only issue is whether the Target victims were persons "directly and proximately harmed as a result of the commission of" Defendant's crimes of conviction. 18 U.S.C. § 3663A(a)(2).

We have interpreted that statutory text to mean that "a court may award restitution under the MVRA only for loss that flows directly from the specific conduct that is the basis of the offense of conviction. Thus, a court is authorized to order restitution for the offense of conviction and not for other related offenses of which the defendant was not convicted." *May*, 706 F.3d at 1214 (citations, internal quotation marks, and footnote omitted). In addition, the statute *requires* the court to award restitution in full for each victim of the offense. 18 U.S.C. § 3664(f)(1)(A). The parties dispute whether it was plain error to order restitution to the victims of the Target charges.[4]

Defendant correctly points out that, at the plea colloquy, the government asserted that it would prove (and Defendant admitted) factual allegations concerning Nordstrom only; the Target transactions were not mentioned. Defendant cogently contends that everyone implicitly understood that only the Nordstrom charges constituted the offense of conviction. But the government correctly points out that Defendant pleaded

---

[4] Defendant does not argue—and cannot argue—that he was misled during the plea colloquy as to the potential amount of restitution. As previously noted, the district court advised Defendant that restitution could be as high as $160,000. Instead, Defendant argues that the restitution exceeded the court's statutory authority.

guilty to Count One of the indictment and that its text is broad enough to cover both the Nordstrom charges and the Target charges.

The count charged Defendant with fraudulent credit card use "in Los Angeles and Orange Counties, within the Central District of California, *and elsewhere*," (emphasis added), which includes Colorado, the site of the Target charges. Similarly, the count charged Defendant with fraudulent credit card use "no earlier than on or about March 13, 2011, and continuing through on or about December 17, 2011." Although there is some evidence to the contrary, much evidence in the record would support a finding that the Target charges occurred in July 2011. For example, the presentence report itemized the Target charges and noted that they occurred "in July 2011." On plain-error review, the burden is on Defendant to demonstrate error. To the extent that the record is unclear as to the date of the transactions, the fault rests with Defendant for failing to object before the district court in order to make a more complete record. Accordingly, we conclude that, for purposes of plain-error review, the Target charges occurred in July 2011—within the indictment period.

Defendant did not plead guilty only to the Nordstrom allegations—he pleaded guilty to Count One of the indictment. "A guilty plea conclusively admits all factual allegations of the indictment . . . ." *United States v. Kubick*, 205 F.3d 1117, 1129–30 (9th Cir. 1999) (internal quotation marks omitted). The fraudulent Target charges fit within the scope of that count, and Defendant does not contest that he actually engaged in criminal conduct at the Target store in Colorado that meets the terms of the indictment. Especially given "the MVRA's broad remedial purpose," *United States*

*v. Eyraud*, 809 F.3d 462, 468 (9th Cir. 2015), Congress likely intended restitution to all victims within the scope of an admitted crime, even if the parties focused primarily on one set of victims at the plea colloquy.

The Fourth Circuit's decision in *United States v. Bailey*, 975 F.2d 1028, 1033–34 (4th Cir. 1992), supports that conclusion. In that case, the defendant pleaded guilty to a count in the indictment of defrauding investors of more than $15 million. *Id.* at 1033. The court rejected his argument on appeal that restitution was proper only with respect to investors specifically named in the indictment. *Id.* The court reasoned that his "offense was defined broadly in the indictment," he pleaded guilty to the broadly defined charge and, accordingly, restitution was appropriate for all investors within the indictment, not just those investors named specifically. *Id.* The same reasoning applies here: Defendant pleaded guilty to Count One of the indictment, and restitution is therefore appropriate for all victims of that count. *See also United States v. Jackson*, 982 F.2d 1279, 1283–84 (9th Cir. 1992) (holding that restitution is appropriate for all victims of the count of conviction, even though other counts, involving the same victims and the same loss, were dismissed).

Moreover, the "factual basis" requirement for the plea colloquy does not mandate that the government list *all* facts constituting the crime; the government merely must demonstrate that "there is sufficient evidence to support the conclusion that the defendant is guilty." *United States v. Covian-Sandoval*, 462 F.3d 1090, 1093 (9th Cir. 2006) (internal quotation marks omitted). The purpose of the "factual basis" requirement is simply "to ensure that the defendant is not mistaken about whether the conduct he

admits to satisfies the elements of the offense charged." *United States v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009). Because the Nordstrom charges indisputably were sufficient to establish a factual basis for Defendant's crime, the government was not required to mention the Target charges at the plea colloquy.

But we need not and do not decide definitively whether the district court erred, because any error was not plain. We agree with the First Circuit's treatment of this issue in *Acosta*. In that case, the defendant pleaded guilty to a one-count indictment for credit-card fraud during a 10-month period, in violation of § 1029(a)(2), the same statute at issue here. *Acosta*, 303 F.3d at 81. Before accepting the plea, the district court had suppressed evidence of some of the fraudulent transactions. *Id.* At sentencing, the district court ordered the defendant to pay restitution to *all* victims, including victims of the suppressed transactions. *Id.* at 82. The defendant did not object. *Id.* On appeal, the First Circuit held that "there was no plain error in the district court's use of the suppressed evidence to calculate restitution." *Id.* at 90. For the same reasons, we conclude that any error here was not plain.

**AFFIRMED.**

GRABER, Circuit Judge, concurring:

I concur in full in the majority's opinion. I write separately to question the validity of our case law with respect to the standard of review applicable to arguments raised for the first time on appeal by criminal defendants.

> A federal court of appeals normally will not correct a legal error made in criminal trial court proceedings unless the defendant first brought the error to the trial court's attention. *See United States v. Olano*, 507 U.S. 725, 731 (1993).  But Federal Rule of Criminal Procedure 52(b), creating an exception to the normal rule, says that "[a] plain error that affects substantial rights may be considered even though it was not brought to the [trial] court's attention."

*Henderson v. United States*, 133 S. Ct. 1121, 1124 (2013) (brackets in original) (emphasis omitted).  Except in unusual circumstances, that is all there is to it:  we must review new, unpreserved arguments for plain error.  *See, e.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) ("[B]ecause the defendant failed to object to the miscalculation [of the Guidelines range], appellate review of the error is governed by Federal Rule of Criminal Procedure 52(b)."); *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) ("Because the claim of [Federal Rule of Criminal Procedure 11] error was not preserved by timely objection, the plain-error standard of Rule 52(b) applies . . . .").

An exception applies when the new issue concerns "a nonwaivable limit on federal courts' subject-matter jurisdiction."  *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *see United States v. Doe*, 366 F.3d 1069, 1075–76 (9th Cir. 2004) (en banc) (describing the limited nature of this exception).  But when the relevant statute "does not impose a jurisdictional limit, the failure to raise it at or before trial means that it is reviewable on appeal—if at all—only for plain error."  *Musacchio*, 136 S. Ct. at 718

(citing Fed. R. Crim. P. 52(b)); *see also United States v. Cotton*, 535 U.S. 625, 631 (2002) ("Freed from the view that indictment omissions deprive a court of jurisdiction, we proceed to apply the plain-error test of Federal Rule of Criminal Procedure 52(b) to respondents' forfeited claim.").

The Supreme Court has noted the possibility that Rule 52(b) may not apply if "some other provision authorizes the error's correction." *Olano*, 507 U.S. at 732. But the Court has rejected attempts to read exceptions into Rule 52(b)'s "plain error" standard. *See United States v. Vonn*, 535 U.S. 55 (2002) (holding that Rule 11 does not create an exception to plain-error review); *Jones v. United States*, 527 U.S. 373 (1999) (holding that the Federal Death Penalty Act of 1994 did not create an exception to plain-error review).

The Supreme Court has left very little room—if any at all—for the judicial creation of exceptions to Rule 52(b). The Court has "cautioned against any unwarranted expansion of Rule 52(b)." *Johnson v. United States*, 520 U.S. 461, 466 (1997). "Even less appropriate than an unwarranted expansion of the Rule would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make." *Id.*; *see also Puckett v. United States*, 556 U.S. 129, 135–36 (2009) (noting this principle).

Our own case law generally accords with the principles noted above: we review run-of-the-mill new, unpreserved arguments for plain error. But one persistent line of our cases allows a judicially created exception: "we are not limited to [the plain-error] standard of review where the appeal presents a pure question of law and there is no prejudice to the opposing party." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 426 (9th Cir. 2011); *accord United States v.*

*Torres*, No. 14-10210, 2016 WL 3770517, at \*7 (9th Cir. July 14, 2016); *United States v. Joseph*, 716 F.3d 1273, 1276 n.4 (9th Cir. 2013); *United States v. Evans-Martinez*, 611 F.3d 635, 642 (9th Cir. 2010); *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009); *United States v. Flores-Montano*, 424 F.3d 1044, 1047 (9th Cir. 2005) (per curiam); *United States v. Si*, 343 F.3d 1116, 1128 n.2 (9th Cir. 2003); *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267–68 (9th Cir. 2001); *United States v. Maldonado*, 215 F.3d 1046, 1051 n.5 (9th Cir. 2000); *United States v. Petty*, 80 F.3d 1384, 1387 (9th Cir. 1996); *United States v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1995); *United States v. Bruce*, 976 F.2d 552, 554–55 (9th Cir. 1992); *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991); *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978). Our "pure question of law" exception contradicts Rule 52(b) and the Supreme Court's case law. Usually questions of law are not jurisdictional, and certainly questions of law are not *necessarily* jurisdictional, so the exception for jurisdictional questions almost never applies. In my view, no legal source authorizes the exception.

We first announced our "pure question of law" exception in a criminal appeal in our 1978 decision in *Patrin*, 575 F.2d at 712, and we have perpetuated the rule ever since by citing *Patrin* or one of its progeny. Here's how *Patrin* announced the rule:

> As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). . . .
>
> . . . .

Our circuit has apparently recognized a . . . narrow exception to the general rule. When the issue conceded or neglected in the trial court is purely one of law and either does not affect or rely upon the factual record developed by the parties, *cf. Golden Gate Bridge & Highway Dist. v. United States*, 125 F.2d 872, 875 (9th Cir. 1942) (whether a contract is ambiguous will be considered by court of appeals although appellee had conceded the ambiguity below), or the pertinent record has been fully developed, *see United States v. Merrill*, 211 F.2d 297, 302–03 & n.4 (9th Cir. 1954), the court of appeals may consent to consider it. The evident principle underlying this exception is that the party against whom the issue is raised must not be prejudiced by it. Thus, if he might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue, it should not be permitted to be raised for the first time on appeal.

*Patrin*, 575 F.2d at 712 (citations and footnote omitted). All three of the cited cases are *civil* cases, in which Federal Rule of Criminal Procedure 52(b) has no application. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 410–11 (2009) (distinguishing the harmless error rule in civil and administrative cases from the harmless error standard in criminal cases). Similarly, *Patrin*'s explanation following the citations makes sense in civil appeals, but it has no merit in criminal appeals, where Rule 52(b)'s contrary prescription applies. Given the Supreme Court's statement that we have "no authority to

make" "an exception" to Rule 52(b), *Johnson*, 520 U.S. at 466, our importation of a civil standard into the criminal context cannot withstand scrutiny. Our "pure question of law" exception is incorrect.

I have not uncovered a single sister circuit that applies our "pure question of law" exception in criminal appeals. To the contrary, our sister circuits routinely review pure questions of law for plain error. *See, e.g.*, *United States v. Fuertes*, 805 F.3d 485, 497 (4th Cir. 2015) (holding that the defendant's claim "is a purely legal one" and that "his claim may be reviewed only for plain error"); *United States v. Angel*, 355 F.3d 462, 469 (6th Cir. 2004) (holding that the defendant raises a "pure question of law" and that, because it "is being raised for the first time on appeal, we will apply the 'plain error' standard of review"). The Fifth Circuit's experience is telling. For a time, that court applied a version of our "pure question of law" exception. *E.g.*, *United States v. Bullard*, 13 F.3d 154, 156 n.5 (5th Cir. 1994) (per curiam). Sitting en banc, the court overruled *Bullard* and other similar cases, and the court described the "plain error" standards pursuant to *Olano*'s teachings. *United States v. Calverley*, 37 F.3d 160, 163–64 (5th Cir. 1994) (en banc), *overruled in other part by Johnson*, 520 U.S. 461.

In sum, our line of the cases permitting an exception for "pure questions of law" is contrary to Rule 52(b), Supreme Court precedent, and the practice of our sister circuits. Here, the standard of review may dictate the outcome.[1] We ought

---

[1] Arguably, the question here is a question of law, *United States v. Reed*, 80 F.3d 1419, 1421 n.3 (9th Cir. 1996), instead of a mixed question of law and fact.

to reconsider our errant line of cases en banc, either now or in a future appropriate case.

TASHIMA, Circuit Judge, dissenting:

The majority holds that the district court did not plainly err in ordering restitution for the Colorado Target charges because "the text [of Count One] is broad enough to cover both the Nordstrom charges and the Target charges." Maj. Op. at 11–12. Because I disagree with the majority's strained reading of the indictment – especially in light of the rest of the record – I respectfully dissent.

As the majority notes, the district court "may award restitution . . . only for loss that flows directly from 'the specific conduct that is the basis of the offense of conviction.'" *United States v. May*, 706 F.3d 1209, 1214 (9th Cir. 2013) (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir. 2001)). "Thus, a court is authorized to order restitution 'for the offense of conviction and not for other related offenses of which the defendant was not convicted.'" *Id.* (quoting *United States v. Batson*, 608 F.3d 630, 636 (9th Cir. 2010)).[1]

---

[1] The MVRA also authorizes restitution to "any person directly harmed by the defendant's criminal conduct in the course of [a] scheme, conspiracy, or pattern," 18 U.S.C. § 3663A(a)(2); *see United States v. Thomsen*, 2016 WL 4039711, at 12 (9th Cir. Jul. 28, 2016), but that broadened scheme-or-conspiracy exception doesn't apply here. The majority adopts the interpretation from the Tenth, First, and Fourth Circuits that 18 U.S.C. § 1029(a)(2) does not "involve[] as an element a scheme, conspiracy, or pattern of criminal activity." *See* Maj. Op. at 10–11.

The issue in this case is what "specific conduct" formed "the basis of the offense of conviction." To ascertain Zhou's offense of conviction, the Court must look to Count One of the indictment, the charge to which Zhou pleaded guilty. *See United States v. Kubick*, 205 F.3d 1117, 1129–30 (9th Cir. 1999).

An indictment must meet the following requirements:

> An indictment must provide the defendant with a description of the charges against him sufficient to (1) enable him to prepare his defense; (2) ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge.

*United States v. Livingston*, 725 F.3d 1141, 1145 (9th Cir. 2013) (quoting *United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir. 1980)).

To support its position that the indictment included the Colorado Target charges, the majority relies entirely on only two words: that Count One of the indictment alleges that the fraud occurred in the Central District of California "*and elsewhere*" (emphasis added). This bare assertion cannot bear the weight the majority asks it to carry. If "and elsewhere" were a catch-all encompassing literally every location where Zhou might have committed credit card fraud during the specified time period, it would be entirely unclear what conduct was encompassed by the charge. An indictment that referred, not to specific fraudulent conduct, but to

fraudulent conduct anywhere in the United States, would not meet *Livingston*'s requirements because it would not sufficiently limit the facts the government could adduce at trial to prove the charge. *Cf. United States v. Doss*, 630 F.3d 1181, 1191 (9th Cir. 2011) (noting that the indictment sufficiently identified the time and place of the conduct underlying the offense of conviction to give the defendant "notice of what evidence might be presented at trial").

Further, as the majority acknowledges, the record shows that both the government and the district court understood that the offense of conviction included only the California Nordstrom charges. For example, during the plea colloquy, the government stated that it would be prepared to prove the fraudulent Nordstrom charges at trial, but did not mention the Target charges. The purpose of the government's showing as to the factual basis for the plea "is to ensure that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged." *United States v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009). This purpose cannot be satisfied if the court never asks the defendant to confirm that the government's allegations regarding his conduct are correct. In this case, the district court asked Zhou whether "everything" the government said about his conduct and intent was true and correct; but the government's proffer referred only to the Nordstrom charges. Because the court never asked Zhou about his Colorado conduct, the Rule 11(b)(1) colloquy is not susceptible to the reading necessary to support the majority's position that Zhou admitted to that conduct.

Additionally, the Presentence Investigation Report explicitly differentiates between the Nordstrom charges and

the Target charges:**[2]** It refers to the Nordstrom charges as "the transactions charged in the instant offense," while it characterizes the Target charges as conduct "*relevant . . . to the instant conviction*" (emphasis added). The government argued that Zhou should pay restitution for this "relevant" conduct, in addition to the Nordstrom charges, and the district court agreed.

Indeed, the district court understood that it was ordering restitution not only for the offense of conviction, but for all relevant conduct as well. The district court explicitly acknowledged that "[t]he amount of restitution is *not limited* to the amounts alleged in the count to which [Zhou pleaded] guilty *and will include* losses arising from the count dismissed as well as *all relevant conduct* in connection with those counts" (emphasis added). The court accordingly advised Zhou that the amount of restitution could be as high as $160,000. The district court's statement of the law, and the corresponding restitution calculation, directly contravene our case law, which holds that a district court is not authorized to order restitution for conduct that is merely *related* to the offense of conviction, but is not an element of the offense. *See May*, 706 F.3d at 1215.

Both the text of the indictment and the record – including the plea colloquy and the Presentence Investigation Report – show that the Colorado Target charges did not form the basis of the offense of conviction. The district court thus plainly erred in ordering restitution for the losses attributable to

---

**[2]** "To the extent that we refer here to facts contained exclusively in the presentence report, we pro tanto lift the order sealing that document." *United States v. Pimentel-Lopez*, 2016 WL 3874414, at *4 n. 3 (9th Cir. July 15, 2016).

relevant conduct, rather than the offense of conviction. *See id.* I thus would vacate the restitution order and remand with directions that the district court limit its restitution order to only the Nordstrom California charges, *i.e.*, the losses attributable to the offense of conviction.

I respectfully dissent.[3]

---

[3] Because the issue under review here "is best characterized as a 'mixed question of law and fact,' not a 'pure question of law,'" Maj. Op. at 9 (citation omitted), I fail to see the need for or utility of the concurrence's extended discussion of our standard of review, in a plain error context, of a pure question of law. Moreover, while the concurrence asserts that "[h]ere, the standard of review may dictate the outcome," Concur. Op. at 19, it doesn't explain how that can be when the issue we are reviewing is a mixed question of law and fact, not a pure question of law.